CHARLES H. SARGENT *v.* ROBERT M. MOORE, ET AL.

1. A cause of action, founded upon the breach of a condition in a bond must be so stated, *in the petition*, as to show the character and extent of the obligation.
2. The filing of a bond or other instrument sued on, and referring to it in the petition as "Exhibit A" is of no avail unless it is attached to the pleading, or the substance and terms thereof are recited in the petition.
3. Brigade commandants of militia have the complete control of the public arms issued to them by the State, and they can fix and change the distribution of such arms in such manner and whenever they deem proper.

SPECIAL TERM.—This is an action against R. M. Moore, John O'Dowd, and Sylvester Leonard, to recover the possession of forty United States muskets, with accoutrements, delivered by the plaintiff as commandant of the third brigade of the first division of Ohio militia, to the defendant Moore, as commandant of the Sarsfield Light Artillery, one of the companies of said brigade, and which the defendants refuse to redeliver to the plaintiff, wherefore he asks damages in the sum of three hundred dollars.

The defendants demur to the petition for the following causes:

1. That the plaintiff has not legal capacity to sue.

2. That the petition does not state facts sufficient to constitute a cause of action.

3. That the petition, on its face, shows that the court has no jurisdiction either of the persons of the defendants, or of the subject of the action.

The allegations of the petition appear in the decision.

*F. T. Chambers*, for plaintiff.

*Patrick McGroarty*, for defendants.

SPENCER, J. The petition avers that the plaintiff is commandant of the third brigade, first division, Ohio militia, and that as such, on the 3d of July, 1854, he delivered to R. M. Moore, as commandant of the Sarsfield Light Artillery, one of the companies in said brigade, forty stand of " United States muskets, with accoutrements," upon condition that the same were to be returned to the plaintiff, when he should so order, " according to the terms and effect of a bond herewith filed, and marked Exhibit A." And the plaintiff alleges, that on the 12th day of July, he ordered the property to be returned to him; that the same is now in the possession of the defendants; and that the defendants refused to deliver the same to the order of the plaintiff; and that they still detain the same, to the damage of the plaintiff, three hundred dollars. Wherefore he asks judgment.

The petition, in this case, does not, *in terms*, aver a right of possession in the plaintiff, to the property therein described—nor does it satisfactorily present such facts as show a right of immediate possession. The averment from which such right was intended to be inferred, is, " that the plaintiff delivered the property in controversy, to the defendant, Moore, to be returned to the plaintiff when he should so

order, agreeably to the tenor of a certain bond, given by the defendants."

This bond is not set forth in the petition, nor referred to as part of it—nor can we tell, without going outside of the petition, what its tenor is.

It then avers a demand by the plaintiff upon the defendants, of the property in their possession, which it is said they refused to deliver, and still detain the same. It is to be observed, that this detention is not averred to be wrongful, nor can we determine that it is so, without recurring to the terms of the bond, which are not set forth in the petition, and we are not, therefore, at liberty to conjecture what they are.

The demurrer, therefore, is well taken.

The question next arises as to whether this petition can be made good by amendment.

Upon looking at the bond supposed to be referred to in the petition, we find that the arms referred to are public property, which were put into the charge of the plaintiff, as brigadier-general of the third brigade, first division, Ohio militia, for distribution, agreeably to the provisions of the act of assembly, passed March 29, 1837; that the plaintiff, as such brigadier-general, having the custody of said arms, delivered the same, on the day named in the petition, to the defendant, Moore, he being the commandant of a volunteer company, within and part of said brigade, duly assigned, to be kept, disposed of, and delivered over to the successor in office of said defendant, or to the commandant of said brigade, in good repair, according to the provisions of said act.

The act above referred to, is entitled "an act to provide for drawing from the United States and distributing the public arms, appropriated to the militia of this State." The first four sections of the act authorize the governor to draw the arms from the United States, and, with the assistance of the quarter-master general, to distribute the same among the commandants of divisions. The fifth section makes it

the duty of commandants of division to distribute the same among the several brigades within their respective divisions, and to take the receipts of commandants of brigades for the same. The seventh section is different in its. phraseology from the fifth. By the fifth section it is made the duty of the commandants of divisions to distribute the arms among the respective brigades,—but by the seventh section, it is not so made the duty of the commandants of brigades, to distribute, but on the contrary, the matter is left *discretionary* with them. Its language is thus:

"The commandant of each brigade shall have the right to distribute the arms assigned to his brigade, to such uniformed companies as he may think most entitled thereto, and shall take a superintending care over the same, and keep them in good repair, or he shall withdraw them from any company, and cause them to be cleaned and repaired, at the expense of the officers of such company; and may have them deposited with the quarter-master of brigade, or such other company, as he may think will best promote the interests of his brigade."

The eighth section of the act makes it the duty of the commandant of brigade to take bond from the commandants of companies, to whom he may deliver arms as aforesaid, conditioned for the preservation, safe-keeping, and delivery of such arms, in good repair, to his successor in command of such company, or to the order of the commandant of brigade, for the time being; and said commandant, for a breach of such conditions, is required to prosecute the bond in the name of the State of Ohio.

The eleventh section requires the commandant of each brigade, to cause his quarter-master to provide a place of safe-keeping for the public arms, within his brigade, that may not be distributed to companies, and to keep an account-current with the commandant of each company to whom arms may have been delivered, charging him with the arms received, and giving credit for those returned, or transferred, as provided for in said act.

It is plain, that the seventh, eighth, and eleventh sections of this act create the commandants of brigades the general custodians of the public arms. They are required to provide a place of safe-keeping for them; to see that they are kept in good order and repair, whether in armory or distributed; and when distributed, if not kept in order, to cause the same to be cleaned at the expense of the company's officers, and taken away from such company, and deposited in armory, or transferred to other companies, within the brigade; or to bring an action in the name of the State against the defaulting officers. As such custodians, they have the right of possession to the public arms, in the first instance, and such a special property in them, as to bring an action to recover such arms when wrongfully taken, or wrongfully withheld from their possession; as much so as the captain of a company would have to recover their possession from a wrong-doer, who had improperly taken them from him.

The seventh section of the act authorizes the commandant of each brigade, to consign the custody of the arms in his charge, to the commandants of such companies as he may think most entitled thereto, and shall take a superintending care over the same, and keep them in good repair; or he shall withdraw them from any company, or cause them to be repaired, etc., and deposit them with the brigade quartermaster, or such other company as he may think will best promote the interests of his brigade. There is one case, therefore, in which the commandant is authorized to take possession of the public arms, after they have been distributed to the commandants of companies—and upon demand made for that purpose, when the inquiry arises, should the commandant of a company refuse to give up such possession, the commandant of brigade may obtain it, by replevin, as though the same had been originally wrongfully taken from his possession, or as though the same had been handed over by him, for repair, and been wrongfully withheld by the artizan, to whom the same had been delivered, for that purpose. It would not be necessary, in such case, to resort to

an action on the bond, in the name of the State, under the eighth section of the law. The remedy by bond being merely cumulative, and perhaps wholly futile, should the emergency of the State require the use of the public arms.

But it is supposed, and claimed by the defendants' counsel, that when the public arms have been distributed, under the seventh section, by the commandant of a brigade to the commandant of a company, the former is not authorized to withdraw them, except for the purpose of being cleaned and repaired, upon the well-known maxim, that "*expressio unius est exclusio alterius*"—and, that as the language of this section expressly authorises the arms to be withdrawn for the purpose of being cleaned and repaired, it does not authorize them to be withdrawn in any other case. But such, it seems to me, is not the fair construction of the language used, nor a proper inference to be drawn from it. The language of the section is not, that he shall withdraw the arms in case they are not kept in good repair—though such, doubtless, would be his duty—but that he may distribute them to such companies as he may think most entitled, and shall take care of, and keep the same in good repair; or he shall withdraw them from any company, and cause them to be repaired at the expense of the officers thereof, and may dispose of them otherwise.

The language of the section clearly leaves it optional with him whether to distribute at all or not, and in making such distribution, to select such companies as, in his judgment, may be most entitled thereto, and will take best care thereof. The discretion to make such selection, in the first instance, seems to imply its continuance in future cases; so that if the commandant should find that he had made an improper selection, or that circumstances had changed, so as to make the continuance of such selection improper; or if the public good should require the restoration of the public arms, he should be at liberty to make a change of their custody, or cause the same to be wholly returned.

The right to withdraw is not made to depend upon the

contingency of the arms not being kept in repair; but it is absolute—"he shall withdraw and cause them to be repaired, at the expense of the officers of the company."

There are many contingencies, in which it would be manifestly proper for the commandant of brigade to require a redelivery to him, of the public arms, notwithstanding they may be kept in perfect order and repair. As, where the commandant of a company had ceased to act as such, and delivered over the public arms to his successor, who refused to give bond therefor. So, when the company becomes disbanded, or falls off in numbers, so as to be below what the law requires to form a company. So, when the militia are called into active service, and a volunteer company does not offer its services, in the field.

These, and the like emergencies, show that the right to withdraw the public arms does not depend upon the mere failure of a company to keep them in good repair, but may exist in other cases; and the extent of the emergency which calls it into exercise, must necessarily be judged of by the officer having the general care and charge thereof,. Should he wantonly abuse such a power, he would, doubtless, be amenable for such abuse. But the exercise of a sound discretion, with regard to the withdrawal of the public arms, seems as proper as its exercise in making a distribution of them.

Entertaining this view of the law, we shall allow the plaintiff to make such an amendment of his petition as he may deem necessary to set forth a good cause of action.

Demurrer sustained, with leave to amend petition.